**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 48313**

| | |
|---|---|
| **RAYMOND HENRY VOSS, III,** ) | |
| ) | **Filed: August 19, 2021** |
| **Plaintiff-Appellant,** ) | |
| ) | **Melanie Gagnepain, Clerk** |
| **v.** ) | |
| ) | |
| **JANILYN H. VOSS,** ) | |
| ) | |
| **Defendant-Respondent.** ) | |
| ) | |

Appeal from the District Court of the Seventh Judicial District, State of Idaho, Fremont County. Hon. Stevan H. Thompson, District Judge; Hon. Mark A. Beebe, Magistrate.

Decision of the district court, on intermediate appeal from the magistrate court, affirming an order awarding spousal maintenance and child support, <u>affirmed</u>.

Dunn Law Offices, PLLC; Robin D. Dunn, Rigby, for appellant. Robin D. Dunn argued.

Beard St. Clair Gaffeny, PA; Kristopher D. Meek, Idaho Falls, for respondent. Kristopher D. Meek argued.

_____

BRAILSFORD, Judge

Raymond Henry Voss, III, appeals the district court's decision on intermediate appeal affirming the magistrate court's order awarding spousal maintenance and child support to his ex-wife, Janilyn H. Voss. Specifically, Raymond argues the district court erred by affirming the magistrate court's finding that he is voluntarily underemployed. We affirm.

**I.**

**FACTUAL AND PROCEDURAL BACKGROUND**

This appeal is Raymond's third appeal of the magistrate court's order awarding spousal maintenance and child support to Janilyn. Raymond and Janilyn were married in December 1979 and had seven children together during the marriage. In August 2015, after more than

thirty-five years of marriage, Raymond filed for divorce. At the time, their youngest child was still a minor.

## A. Initial Awards of Spousal Maintenance and Child Support

Following a three-day trial, the magistrate court entered written findings of fact and conclusions of law in July 2017 ("2017 decision"). Relevant to this appeal, the magistrate court found that Raymond had been employed for approximately twenty years as "a fairly successful, hard[-]working automobile salesman" for an automobile dealership in Idaho Falls. Based on Raymond's employment records, his gross income before the divorce was $73,203.00 in 2013; $62,505.00 in 2014; and $62,091.00 in 2015. Then in 2016--the year after Raymond filed for divorce--his gross income drastically reduced to $28,953.00.

Regarding Janilyn's earning capacity, the magistrate court found that Janilyn's "work history is limited and sporadic"; she "has been mainly a mother" to her seven children; she did not work outside the home, except for about ten years beginning in 1984 as a convenience store clerk earning minimum wage; she "dabbled" in her own home decorating business by painting houses and hanging wallpaper for low-level compensation; and she now suffers from "a painful arthritic condition which limits her ability to engage in sustained physical work." Based on these findings, the magistrate court concluded Janilyn was "capable of earning approximately $15,000.00 per year as a retail store clerk, and an additional $3,000.00 from her home decorating skills." Further, it concluded $18,000.00 annually was insufficient to meet her reasonable needs.

In determining the amount of spousal maintenance and child support, the magistrate court found that Raymond "is a qualified and effective car salesman capable of earning [his historic] level of income." It concluded that this historic income was $65,933.00, the average of his gross annual income for 2013, 2014, and 2015; the couple's total "combined prospective income" was $83,933.00 ($65,933.00 plus $18,000.00); each spouse's one-half share of this prospective income was $41,966.00; and "to equalize earnings from employment," Raymond should pay Janilyn spousal maintenance of $23,996.00 (rounded up to $24,000.00) annually or $2,000.00 per month for eight years. From this monthly payment, the magistrate court deducted $500.00 to account for Janilyn's receipt of the community property home, which was mortgage free, and the court ultimately concluded Janilyn should receive spousal maintenance in the amount of $1,500.00 per month. Additionally, the magistrate court awarded Janilyn child support in the amount of $579.67 per month.

2

The magistrate court also found other facts bearing on the spousal maintenance award including Janilyn's "monthly needs," as reflected on a budget she admitted into evidence; her lack of "substantial work experience"; her less than "strong emotional condition having suffered through the difficulties during the pendency of the divorce"; the period of time necessary to allow her "to increase her ability to achieve economic independence," which the court concluded was eight years; and the marriage's thirty-eight-year duration (at that time). Further, the magistrate court found Raymond's treatment of Janilyn during the marriage was extremely cruel, including that Raymond physically, psychologically, and verbally abused Janilyn. *See* Idaho Code § 32-603 (providing extreme cruelty may be grounds for divorce).

**B.      Raymond's First Intermediate Appeal of Spousal Maintenance and Child Support Awards**

Raymond appealed, among other things, the magistrate court's spousal maintenance and child support awards. In October 2018, the district court issued a written opinion addressing Raymond's appeal ("2018 opinion"). The district court affirmed all of the magistrate court's rulings, except for its award of spousal maintenance and child support, and it remanded the case for further proceedings on these issues.

Regarding the spousal maintenance award, the district court's ruling focused on Janilyn's needs and ruled that the magistrate court abused its discretion by failing to make a "finding as to what Janilyn's reasonable needs are." The district court stated that it "did not exhaustively address each individual issue" regarding spousal maintenance because it was remanding the case for the magistrate court "to take another look at spousal maintenance." Regardless, the district court affirmed certain rulings of the magistrate court related to spousal maintenance, including "Janilyn's total property interests," Raymond's payment of Janilyn's tuition costs, and his extreme cruelty to Janilyn. Regarding this latter ruling, the district court explained that it "may not reweigh the evidence on appeal [or] second guess credibility determinations made by the trier of fact who personally observed the demeanor, tone, and attitude of the witnesses at trial." The district court's decision did not address either the magistrate court's determination that Raymond's gross income "for the purposes of determining spousal support to be the average of [his income for 2013, 2014, and 2015] or $65,933" or Raymond's ability to pay spousal maintenance. *See* Idaho Code § 32-705(2)(e) (providing spouse's ability to pay is factor court may consider to award spousal maintenance).

Regarding the child support award, the district court ruled that "the magistrate [court] made no finding, and Janilyn has identified no evidence, that Raymond made a voluntary choice to change his financial position." The district court noted that "the timing of the job assignment and compensation changes do raise red flags and arouse serious suspicion over whether Raymond's drastic income decrease was coordinated and motivated by the prospect of paying child support and spousal maintenance." The court concluded, however, that "absent a clear finding that Raymond voluntarily elected to change jobs into a lower paying position, [the magistrate court's] equitable resolution was not based on substantial and competent evidence." Based on these rulings, the district court remanded the issues of child support and spousal maintenance for "further proceedings" and "further factual findings."

## C.    Awards of Spousal Maintenance and Child Support on Remand

After remand, the magistrate court held a hearing to address the "arguments of counsel regarding the findings the court should make." Following that hearing, the court filed a "memorandum of hearing" in which it noted that the district court had "remanded the case instructing [the magistrate] court to make findings regarding the appropriate level of gross income of [Raymond] which is the basis for child support and spousal support"; "counsel for both sides believed that the directed findings be made not only based upon the trial record, but also upon evidence produced at a further evidentiary trial of those issues"; and the [magistrate] court "agrees that the trial record ought to be supplemented by further evidence of the issues on remand."

Thereafter, Janilyn took the deposition of Raymond's employer, Blake Loveland. Then, in February 2019, the magistrate court held a second trial to supplement the original trial record. At the beginning of that second trial, the court addressed Raymond's assertion that the trial was "a new trial de novo" "as if the slate was clean." The court rejected this assertion, stating that "any evidence bearing on [the remanded issues] that was developed at trial would also be considered in the context of deciding along with the new evidence that the Court would hear today."

During the second trial, Janilyn and Raymond were the only witnesses to testify. Following the second trial, the magistrate court held a hearing to address whether it should consider Loveland's entire deposition testimony (versus only those portions the parties had identified), and it entered an order ruling that it would consider Loveland's entire deposition

4

testimony. Then, the magistrate court issued its written findings and conclusions on remand ("2019 decision").[1]

In this 2019 decision, the magistrate court concluded that determining Raymond's "potential income" for purposes of awarding child support under Idaho Rule of Family Law Procedure 126(F)(3)(a) and determining his "ability" to pay spousal maintenance under I.C. § 32-705(2)(e) involve "essentially the same task," i.e., determining "whether or not Raymond became voluntarily underemployed when his income was essentially halved during the pendency of [the] divorce and thereafter." Addressing this issue, the magistrate court ruled "it is more probable than not that [Raymond] is voluntarily underemployed." In support of this conclusion, the magistrate court found that, although Raymond "works for the same employer in the same industry as he did before the divorce," "he doesn't have the same job that compensates his skills." The magistrate court concluded that Raymond "went from a higher paying job as a salesman to a lower paying job, by half, as a day-to-day manager."

Further, the magistrate court addressed Janilyn's monthly financial needs in detail. It concluded her "annualized resources including the $18,000.00 she could theoretically earn working" are "$28,668.00, leaving [her] needs unfulfilled in the amount of $16,386.00." Based on these findings and conclusions, the magistrate court ordered spousal maintenance for Janilyn in the amount of $1,364.00 per month for eight years beginning August 2017 and reaffirmed its prior award of child support in the amount of $579.67 per month.

### D. Raymond's Second Intermediate Appeal of Spousal Maintenance and Child Support Awards

Raymond again appealed the magistrate court's decision arguing, among other things, that the court erred in determining his income for purposes of child support and spousal maintenance. After oral argument, the district court issued an opinion in August 2020 ("2020

---

[1] Shortly after the evidentiary hearing and before the magistrate court entered its 2019 decision on remand, Raymond moved to disqualify the judge for cause. The magistrate court denied this motion before entering its 2019 decision. On appeal, Raymond explains in his opening brief his reasons for his motion to disqualify the judge. Raymond, however, fails to include the denial of his motion to disqualify as an issue on appeal or to make any argument or to cite any supporting authority related to the issue. Accordingly, Raymond has waived this issue on appeal. *See, e.g.*, *Kugler v. Drown*, 119 Idaho 687, 691, 809 P.2d 1166, 1170 (Ct. App. 1991) (ruling appellant's failure to include issue in issue statement as required by I.A.R. 35(a)(4) eliminates issue from consideration on appeal); *Idaho Dep't of Health & Welfare v. Jane Doe (2018-24)*, 164 Idaho 143, 147, 426 P.3d 1243, 1247 (2018) (ruling appellate court will not address issue on appeal not supported by cogent argument and citation to legal authority).

opinion"), ruling that the relevant inquiry for determining Raymond's income for purposes of spousal maintenance was his earning capacity; "the magistrate court found Raymond's testimony regarding the cause of his decrease in pay to lack credibility"; and substantial and competent evidence supported the magistrate court's conclusion that Raymond's earning capacity was his "potential earning ability of [$65,933.00] per year." In reaching this ruling, the district court rejected Raymond's credibility arguments and his arguments that the court reweigh the evidence, ruling that it would "not make credibility determinations or replace the trial court's findings of fact by reweighing the evidence."

The district court also rejected Raymond's challenge that the magistrate court erred in determining his income for purposes of awarding child support. Specifically, the district court rejected Raymond's argument that he is not voluntarily underemployed. The district court noted, among other things, that "the magistrate court found Raymond's testimony that he continues to sell cars lacked credibility." The district court concluded that competent evidence supported the magistrate court's finding that Raymond is no longer engaged in the similar occupation of selling cars. Accordingly, the district court affirmed the magistrate court's 2019 decision.

## II.

## STANDARD OF REVIEW

For an appeal from the district court, sitting in its appellate capacity over a case from the magistrate division, we review the magistrate court record to determine whether there is substantial and competent evidence to support the magistrate court's findings of fact and whether the magistrate court's conclusions of law follow from those findings. *Pelayo v. Pelayo*, 154 Idaho 855, 858-59, 303 P.2d 214, 217-18 (2013). However, as a matter of appellate procedure, our disposition of the appeal will affirm or reverse the decision of the district court. *Id.* Thus, we review the magistrate court's findings and conclusions, whether the district court affirmed or reversed the magistrate court and the basis therefore, and either affirm or reverse the district court.

## III.

## ANALYSIS

As an initial matter, we note that the trial transcript and exhibits related to the magistrate court's 2017 decision are not included in the appellate record. Raymond was responsible for providing a sufficient record to substantiate his claims on appeal. *See Powell v. Sellers*, 130

6

Idaho 122, 127, 937 P.2d 434, 439 (Ct. App. 1997) (holding it is the responsibility of the appellant to provide a sufficient record to substantiate his claims on appeal). The appellate record is clear that after the district court remanded the case for further factual findings as articulated in its 2018 opinion, the magistrate court held a second trial to *supplement* the evidence admitted during the first trial. Consequently, the magistrate court's factual findings about the issues Raymond raises in this appeal--spousal maintenance and child support--are contained in both the magistrate court's 2017 decision and its 2019 decision. To the extent the factual findings in the magistrate court's 2017 decision are relevant to the issues Raymond raises in this appeal, we will presume those findings are correct. *Id*. (concluding appellate court will not presume error absent record).

## A.     Child Support Award

Raymond challenges the district court's affirmance of the magistrate court's child support award. Rule 126 of the Idaho Rules of Family Law Procedure establishes the Idaho Child Support Guidelines and provides methods for determining a parent's "potential income" for purposes of awarding child support:

> If a parent is voluntarily unemployed or underemployed, child support shall be based on gross potential income. . . . Determination of potential income shall be made according to any or all of the following methods, as appropriate:
> i.      Determine employment potential and probable earnings level based on the parent's work history, occupational qualifications, and prevailing job opportunities and earnings levels in the community.

I.R.F.L.P. 126(F)(3)(a)(i). Whether one of these factors for determining a parent's potential income is more significant than the others depends on the facts of the particular case. *Margairaz v. Siegel*, 137 Idaho 556, 559, 50 P.3d 1051, 1054 (Ct. App. 2002). Further, this Court will not interpret the Idaho Child Support Guidelines "in a manner that would encourage parental abuse of the system." *Aguiar v. Aguiar*, 142 Idaho 331, 336, 127 P.3d 234, 239 (Ct. App. 2005).

Raymond's primary challenge on appeal is that substantial and competent evidence does not support the magistrate court's finding that he is voluntarily underemployed. In challenging this finding, Raymond argues the magistrate court failed to follow the district court's "directives on remand." In support of this assertion, Raymond relies on the district court's rulings in its 2018 opinion that "Janilyn has pointed to no evidence in the record to support her assertion that Raymond chose to change his financial situation"; "the magistrate [court] has made no finding,

7

and Janilyn has identified no evidence, that Raymond made the voluntary choice to change his financial situation"; "mere suspicion--even strong, justifiable suspicion--is no substitute for evidence in the record"; "relying solely [on] Raymond's 'objective earning history' was not the only way to resolve this factual issue"; and "[a]bsent a clear finding that Raymond voluntarily elected to change jobs into a lower paying position, this equitable resolution was not based on substantial and competent evidence."

Based on these statements by the district court in its 2018 opinion, Raymond argues that the magistrate court "violated the law of the case doctrine" on remand. Raymond's argument misconstrues both the district court's 2018 opinion and the law of the case doctrine. The law of the case doctrine provides that "where an appellate court states *a principle of law* when deciding a case, that rule becomes the law of the case and is controlling both in the lower court and on subsequent appeals as long as the facts are substantially the same."[2] *Swanson v. Swanson*, 134 Idaho 512, 516, 5 P.3d 973, 977 (2000) (emphasis added). In other words, "[t]he decision on an issue of law made at one stage of a proceeding becomes precedent to be followed in successive stages of the same litigation." *Id.* The doctrine protects against the relitigation of settled issues. *Id.*

The law of the case doctrine is inapplicable to the purported "directives" that Raymond identifies in the district court's 2018 opinion remanding the case. Contrary to the doctrine, none of these statements relate to any principle of law. Rather, they all relate to the district court's ruling that the magistrate court failed to make a finding in its 2017 decision that "Raymond made the voluntary choice to change his financial situation" and that substantial and competent evidence does not support a finding of voluntary underemployment. These rulings are purely fact-based and any so-called "directives" on remand were simply for the magistrate court to make further factual findings about (1) Janilyn's "reasonable needs" for purposes of determining the appropriate amount of spousal maintenance, and (2) whether Raymond is "voluntarily underemployed" for purposes of determining the appropriate amount of child support.

Raymond also argues that Janilyn failed to present any "new evidence" of his voluntary underemployment and that the magistrate court did not base its factual findings that he is

---

[2]     The law of the case doctrine also prevents the "consideration on a subsequent appeal of a challenge of factual findings that were affirmed in the earlier appeal." *Smith by & Through Smith v. Treasure Valley Seed Co., LLC*, 164 Idaho 654, 656-57, 434 P.3d 1260, 1262-63 (2019). Raymond's appellate challenges, however, do not trigger this application of the doctrine.

voluntarily underemployed on "actual evidence." These arguments are without merit. The magistrate court correctly noted it may consider "the parent's work history" in determining "potential and probable earnings level." *See* I.R.F.L.P. 126(F)(3)(a)(i) (providing court may rely on parent's work history in determining parent's potential income). A review of the record shows, as the magistrate court found, that Raymond "has been a fairly successful, hard[-]working automobile salesman" and is "a qualified and effective car salesman capable of earning [his historic] level of income." That historical income was $65,933.00 annually based on the average of Raymond's gross income for 2013, 2014, and 2015. In earning this historical income, Raymond "was paid a commission of 30% gross profit on each vehicle he sold" and "a commission of 10% of the profit [his employer] made from the banks" for financing that he arranged for customers. Although this pay structure remained in place until May 2017, "[i]n 2016, [Raymond's] earnings were approximately half of the previous three year average." After May 2017, Raymond was no longer a salesman but rather a manager, which is a less difficult job that pays less. Based on these facts, the magistrate court concluded that Raymond's "primary work qualifications remained the same"; i.e., he continues to have the "ability to sell cars and arrange financing for customers." Nevertheless, "he doesn't have the same job that compensates his skills, skills which are no longer employed by [his employer]," and as a result, he is "voluntarily underemployed as the term is used in [Rule] 126(F)(3)(a)(i)."

While there is no direct evidence that Raymond is voluntarily underemployed other than his historical employment as discussed above, the magistrate court's numerous credibility findings support the conclusion that he is voluntarily underemployed. Most notably, the magistrate court found that Raymond's "less than grudging acceptance of his new job, where [he] no longer sells the product and is relegated to these 'managerial' duties without input or protest [is] a defiance of human nature." This finding is the equivalent of finding Raymond voluntarily accepted the lesser-paying position of manager without protest. Further, Loveland's deposition testimony supports the conclusion that Raymond voluntarily accepted underemployment without protest:

Q. Can you tell me why he's--in 2017 he's paid less than half of what he was paid in 2015?

A. We made a decision to restructure the business in an attempt to make it grow. I made the decision to change his pay plan. Pay plan changes occur in this business.

Q. What input did Ray have in that change to his pay plan?

9

Q.   Any other discussion about it?
A.   I offered it and he accepted it.
A.   I offered it and he accepted it.

The magistrate court also found that Loveland was complicit in Raymond's decision to be voluntarily underemployed. For example, it found "Loveland's lack of curiosity concerning the lack of sales of his product by [Raymond], such that he doesn't have a focused conversation or performance review with the main person responsible is [in] defiance of . . . human nature" and that "Loveland is willing to cooperate in [Raymond's] plan" and "to relegate his 20 year faithful and competent salesman to the much more perfunctory duties of day-to-day manager." The trial court may consider an employer's willingness to provide voluntary underemployment in determining a spouse's potential income. *See Margairaz*, 137 Idaho at 559, 50 P.3d at 1054 (concluding salary arrangement with employer was "artifice" to create appearance that earnings were less than income actually generated).

The magistrate court also made numerous other findings about Raymond's and Loveland's lack of credibility, many of which Raymond challenges on appeal. For example, the magistrate court rejected Raymond's explanation that his income was essentially halved in 2016 because he was "operating under a new pay plan in 2016." The magistrate court noted Raymond's explanation "is entirely contradicted" by Loveland, who testified Raymond's new, reduced pay plan was not in effect until May 2017. The magistrate court, however, rejected Loveland's testimony that "market forces" caused the significant drop in Raymond's 2016 income because no evidence supported that explanation.

Further, the magistrate court rejected Raymond's testimony that he made an effort to find a different job utilizing his skills, stating that the court "does not find credible [Raymond's] testimony that he has made substantial effort to find a job which utilizes his skills and qualifications[:] car sales on commission and financing for customers" and that the court "does not believe [Raymond's] testimony that he ever *applied* for another job." In rejecting Raymond's credibility, the magistrate court repeatedly described Raymond's testimony as "obfuscating."[3]

---

[3]    In the magistrate court's 2017 decision, the court also questioned Raymond's credibility. For example, it stated "the court has some reason to question [Raymond's] ability or desire to account for things." In particular, the magistrate court noted that some coins from a coin collection in Raymond's possession had disappeared and that Raymond withdrew $24,131.00 of

10

On appeal, Raymond fails to cite any authority that the magistrate court cannot base its conclusion that he is voluntarily underemployed on circumstantial evidence, including credibility findings rejecting, among other things, testimony that Raymond had no input or control over his employer's "restructuring" that caused Raymond's significant pay decrease. Instead, Raymond simply challenges factually both the magistrate court's credibility findings and the district court's affirmance of those findings. For example, Raymond argues that the magistrate court "should have accepted [Loveland's] testimony" and erred by rejecting it and also "by finding that Janilyn's testimony was more credible than Raymond's testimony." Further, he argues the district court erred by concluding the magistrate court found Raymond's and Loveland's testimony conflicting and by ignoring Loveland's "evident credibility."

The trial court, however, has "great discretion" to weigh "the strength and the credibility of evidence" to make factual findings. *Stewart v. Stewart*, 143 Idaho 673, 678, 152 P.3d 544, 550 (2007). On appeal, this Court liberally construes the trial court's credibility findings because the trial court's province is to determine the witnesses' credibility, the weight to be given their testimony, and the inferences to be drawn from the evidence. *Snider v. Arnold*, 153 Idaho 641, 645, 289 P.3d 43, 47 (2012); *see also Weilmunster v. Weilmunster*, 124 Idaho 227, 238, 858 P.2d 766, 777 (Ct. App. 1993) (noting trial court determines credibility); *see also Chandler v. Chandler*, 136 Idaho 246, 249, 32 P.3d 140, 143 (2001) (same).

In this case, the magistrate court's credibility findings were thoroughly explained and a review of the record shows substantial and competent evidence supports those findings. *See Snider*, 153 Idaho at 645, 289 P.3d at 47 (affirming thoroughly explained credibility findings supported by substantial and competent evidence). For example, Raymond's and Loveland's testimony was conflicting about when Raymond's new pay structure commenced and also about what Raymond's duties are. In addition to these contradictions, a review of the transcript of the second trial shows Raymond repeatedly failed to respond to questions, volunteered nonresponsive information, and otherwise was a difficult witness who was repeatedly admonished by both the magistrate court and his own counsel. Similarly, a review of Loveland's

---

community property funds from a savings account without Janilyn's permission and could not account for about $7,600.00 of the funds.

11

deposition transcript shows his answers were evasive and frequently parroted information provided by the improper speaking objections of Raymond's counsel.

Furthermore, this Court has previously ruled that a magistrate court may properly conclude a parent is voluntarily underemployed based on a credibility finding rejecting the parent's testimony that he did not accept lesser-paying employment to reduce his child support obligation. *Aguiar*, 142 Idaho at 335, 127 P.3d at 238. In *Aguiar*, Jorge and Ana Aguiar lived in California and had two children. *Id.* at 333, 127 P.3d at 236. When they divorced in 1991, a California court ordered Jorge to pay $300.00 a month in child support. *Id.* Then, in September 2002, the court entered an order increasing Jorge's child support payment to $900.00 a month. *Id.* At that time, Jorge "worked for a university in California as a maintenance employee," earning approximately $20.00 an hour and had "a gross monthly income of [$3,543.00]." *Id.* In December 2002, however, Jorge moved to Idaho, secured employment paying $7.00 per hour, and filed a petition in Idaho to modify his child support because he was earning less money. *Id.* Ana opposed the motion, arguing Jorge was voluntarily underemployed. *Id.* At trial, Jorge testified that "he was not fired or forced to leave his job in California" but that "he did not move to Idaho in an attempt to reduce his child support obligation." *Id.* at 334-35, 127 P.3d at 237-38. The magistrate court found that Jorge's testimony "was not credible"; his "sole motive [for moving to Idaho] was to circumvent the increase in his child support obligation"; and his "potential income was the amount he had been earning in California, [$3,543.00] per month." *Id.*

On appeal, this Court concluded substantial and competent evidence supported the magistrate court's finding that Jorge was not credible. *Id.* at 335, 127 P.3d at 238. In reaching this conclusion, this Court noted, "Jorge's decision to leave a well-paying job where he earned significant seniority coincided with the scheduled increase in his child support obligation." *Id.* Further, this Court ruled that the magistrate court did not abuse its discretion "by failing to treat all employment in the field of unskilled labor as necessarily comparable and finding that Jorge's California and Idaho employments were not similar occupations." *Id.*

As in *Aguiar*, the magistrate court in this case found that Raymond and Loveland were not credible in explaining Raymond's reduced-pay employment. As discussed above, these findings are supported by substantial and competent evidence. The evidence shows that despite being a qualified, skilled salesman, Raymond is no longer a salesman but rather a manager;

12

being a manager is a less difficult job and earns less pay; Raymond accepted this lesser position without protest or effort to obtain a comparable compensating position; and Raymond's decision to accept a position providing him half of his historical earnings coincided with his impending child support and spousal maintenance obligations. Accordingly, substantial and competent evidence supports the magistrate court's conclusion that Raymond is voluntarily underemployed, and the district court did not err by affirming this conclusion.

Finally, Raymond's reliance on *Farber v. State*, 107 Idaho 823, 693 P.2d 469 (Ct. App. 1984), to argue that the magistrate court was required to accept Loveland's testimony as an uncontroverted, credible witness is misplaced. In that case, Farber sued the State, claiming it "had taken his easement property without just compensation." *Id.* at 824, 693 P.2d at 470. After the jury awarded no damages, Farber appealed, arguing the jury was required to accept his uncontroverted testimony that the easement's value was, at a minimum, $15,000.00. *Id.* This Court ruled that "the uncontradicted testimony of a credible witness must be accepted by the trier of fact" unless it is "inherently improbable" or "impeached." *Id.* After a review of the record, this Court concluded "the facts and circumstances disclosed at trial, along with the impeachment through cross examination" justified the jury's rejection of Farber's testimony. Just as in *Farber*, the record in this case justified the magistrate court's rejection of certain aspects of Loveland's testimony as inherently improbable because it found them to be not credible.

## B. Spousal Maintenance Award

On appeal, Raymond also challenges the district court's affirmance of the magistrate court's award of spousal maintenance to Janilyn under I.C. § 32-705. Raymond acknowledges that I.C. § 32-705 does not mention the phrase "voluntarily underemployed" but rather that phrase only appears in I.R.F.L.P. 126(F)(3)(a), which governs child support awards. Nevertheless, Raymond addresses the issue of spousal maintenance in the context of whether he is voluntarily underemployed and contends the phrase "embraces both the actual language" in I.R.F.L.P. 126(F)(3)(a) and "Raymond's 'ability' to provide Janilyn with support" under I.C. § 32-705(2)(e). While we agree the factual issues of spousal maintenance and child support implicate much of the same evidence, we disagree that both legal analyses turn on the phrase "voluntarily underemployed." As a result, we address Raymond's challenge to the district court's affirmance of the spousal maintenance award separately.

13

An award of spousal maintenance under I.C. § 32-705 is discretionary and requires the trial court to consider each party's financial needs and abilities. *Pelayo*, 154 Idaho at 861, 303 P.3d at 221. Idaho Code § 32-705(1) provides for an award of spousal maintenance if the trial court finds that the spouse seeking maintenance "[l]acks sufficient property to provide for his or her reasonable needs" and "[i]s unable to support himself or herself through employment." I.C. § 32-705(1)(a), (b). In determining a spouse's "reasonable needs," the trial court is to take into account the standard of living established during the marriage. *Stewart*, 143 Idaho at 551, 152 P.3d at 551. The spouse seeking support must establish a lack of sufficient property and of the ability to support herself. *Moffett v. Moffett*, 151 Idaho 90, 94, 253 P.3d 764, 768 (Ct. App. 2011).

If a spouse establishes she lacks sufficient property and the ability to support herself, then "[t]he maintenance order shall be in such amounts and for such periods of time that the court deems just, after considering all relevant factors," which may include:

(a)     The financial resources of the spouse seeking maintenance, including the marital property apportioned to said spouse, and said spouse's ability to meet his or her needs independently;
(b)     The time necessary to acquire sufficient education and training to enable the spouse seeking maintenance to find employment;
(c)     The duration of the marriage;
(d)     The age and the physical and emotional condition of the spouse seeking maintenance;
(e)     The ability of the spouse from whom maintenance is sought to meet his or her needs while meeting those of the spouse seeking maintenance;
(f)     The tax consequences to each spouse; [and]
(g)     The fault of either party.

I.C. § 32-705(2). This list is not exhaustive; rather, the trial court may also consider other relevant factors. *Campbell v. Campbell*, 120 Idaho 394, 404-05, 816 P.2d 350, 360-61 (Ct. App. 1991).

Under I.C. § 32-705(2), the trial court may consider the potential earning capacity of the spouse from whom maintenance is sought. *See* I.C. § 32-705(2)(e) (providing spouse's "ability" to meet needs is factor for consideration); *Stewart*, 143 Idaho at 680, 152 P.3d at 551 (noting with approval that "trial court found [spouse] was in the prime of his career, and it was reasonable to assume that his earning capacity would remain at a similar or higher level for much of his career"); *Hoskinson v. Hoskinson*, 139 Idaho 448, 462, 80 P.3d 1049, 1063 (2003) (noting with approval trial court's determination that spouse seeking maintenance was "voluntarily

14

underemployed" and estimating her income for purposes of evaluating whether to award spousal maintenance based on "what she was capable of earning"); *Mulch v. Mulch*, 125 Idaho 93, 100, 867 P.2d 967, 974 (1994) (noting substantial, competent evidence supported finding that spouse "could earn additional wages from overtime work" in future).[4]

On appeal, Raymond does not challenge the magistrate court's conclusions that Janilyn lacks sufficient property to provide for her reasonable needs or that she is unable to support herself through employment or otherwise. *See* I.C. § 32-705(1)(a), (b) (providing court may grant spousal maintenance if spouse lacks sufficient property to provide for reasonable needs and is unable to support herself through employment). For example, the following factual findings support an award of spousal maintenance and have already been conclusively established in prior proceedings: Janilyn's lack of financial resources; the lengthy duration of the marriage; Janilyn's age, her emotional condition, and her inability to engage in sustained physical work; Raymond's extremely cruel treatment of Janilyn; and the requirement that maintenance include Janilyn's tuition costs and be paid for eight years. The only factor identified in I.C. § 32-705(2) that remains at issue is Raymond's ability to provide maintenance, i.e., his earning capacity. I.C. § 32-705(2)(e) (noting ability to meet needs as factor). As discussed above, however, substantial and competent evidence supports the conclusion that Raymond's earning capacity is his historic gross annual income of $65,933.00.

Raymond also argues the magistrate court erred "in basing its decision on Raymond's alleged 'plan to win.'" Contrary to this argument, however, the magistrate court did not base its decision on this fact alone. Rather, the magistrate court simply considered Raymond's motivation "to 'win' and leave [Janilyn] financially bereft" as an additional factor in awarding spousal maintenance. The magistrate court may properly consider relevant factors other than those listed in I.C. § 32-705(2), including a spouse's motive to avoid paying spousal

---

[4] At least three Idaho Supreme Court opinions issued before the enactment of Idaho Code § 32-705 in 1980 also provide that the earning capacity of the spouse providing maintenance is a factor to consider in determining the amount of spousal maintenance. *Shepard v. Shepard*, 94 Idaho 734, 737, 497 P.2d 321, 324 (1972) ("In ascertaining whether a given alimony award is just, the current philosophy of this court can be characterized as one of due consideration of the correlative needs and abilities of both parties."); *Hampshire v. Hampshire*, 70 Idaho 522, 526, 223 P.2d 950, 953 (1950) (ruling reasonableness of support depends largely on earning capacity); *Enders v. Enders*, 36 Idaho 481, 484, 211 P. 549, 550 (1922) (considering parties' "earning capacity" and trial court's finding of extreme cruelty by spouse ordered to provide maintenance).

maintenance.  *See Campbell*, 120 Idaho at 404-05, 816 P.2d at 360-61 (noting court may consider other factors).  Raymond fails to cite any authority to the contrary.

Moreover, substantial and competent evidence supports the magistrate court's finding that Raymond had such a motive.  This evidence includes, for example, Raymond's emails to his daughter that Janilyn "will owe 30 to 50 thousand by the time it's done"; "I don't think she can keep going financially . . . especially at trial"; and "I would rather spend 20 thousand at trial than 800 giving in."  Additionally, one witness testified that Raymond told her that "he likes to see [Janilyn] struggling to keep it all together and stay on top of it without him"; "he wants her to suffer and wants her to realize that she needs him"; and "he would do all he could to make her suffer so she would beg him to take her back."

In summary, the magistrate court found that the following factors supported awarding Janilyn spousal maintenance in the amount of $1,364.00 per month for eight years beginning August 2017:  Janilyn's lack of financial resources; the eight years necessary for her to acquire the ability to support herself; the marriage's lengthy thirty-eight-year duration; her age and physical and mental conditions; Raymond's ability to provide support based on historical earning capacity; Raymond's extremely cruel treatment of Janilyn during the marriage; and his motivation to render her destitute.  Substantial and competent evidence supports these findings.  Accordingly, the district court did not err by affirming the magistrate court's award of spousal maintenance.  *See Papin v. Papin*, 166 Idaho 9, 37, 454 P.3d 1092, 1120 (2019) (noting substantial and competent evidence must support spousal maintenance award).

Raymond's remaining arguments simply urge this Court to consider and reweigh the evidence.  For example, Raymond argues the magistrate court "should have accepted [Loveland's] testimony and should not have adopted Janilyn's speculative themes"; "was too focused on Raymond and ignored the evident credibility of [Loveland]"; and erred "by drawing wildly unreasonable inferences about the evidence."  Further, he argues the district court "failed to understand [Loveland's] testimony and relied on supposed contradictions within the testimony."  We decline, however, to reweigh the evidence.  *See Neustadt v. Colafranceschi*, 167 Idaho 214, 227, 469 P.3d 1, 14 (2020) ("[A]ppellate courts in Idaho do not reweigh evidence."); *In re Doe 2009-19,* 150 Idaho 201, 209, 245 P.3d 953, 961 (2010) ("It is not our role to reweigh the evidence.").  Consequently, we reject Raymond's remaining arguments.

## C.     Substantial Prejudice

Raymond argues he has "suffered substantial prejudice to his rights," which he describes as his "statutory right under [I.C.] § 32-705 to only incur spousal maintenance according to his ability to pay" and his "right under I.R.F.L.P. 126 to pay child support based on his gross income at the time of trial--absent a showing of voluntary underemployment." This argument fails because substantial and competent evidence supports the magistrate court's awards of spousal maintenance and child support under these provisions. Moreover, the authority upon which Raymond relies, *Burgess v. Salmon River Canal Co.*, 127 Idaho 565, 903 P.2d 730 (1995), is inapposite. That case does not address any "substantial prejudice." Rather, it provides that "error may not be predicated upon a ruling which admits or excludes evidence unless the ruling is a manifest abuse of the trial court's discretion and a substantial right of the party affected." *Id.* at 574, 903 P.2d at 739. This principle is an evidentiary principle articulated in Idaho Rule of Evidence 103 related to preserving a claim of error and has no application in the context of Raymond's appeal.

## D.     Attorney Fees

Janilyn is the prevailing party on appeal and requests an award of attorney fees under I.C. § 12-121. An award under this provision is appropriate if the nonprevailing party pursued, defended, or brought the appeal frivolously, unreasonably, or without foundation. *Clark v. Jones Gledhill Fuhrman Gourley, P.A.*, 163 Idaho 215, 230, 409 P.3d 795, 810 (2017). To receive an award of attorney fees under I.C. § 12-121, the entire appeal must have been pursued frivolously, unreasonably, and without foundation. *Shepherd v. Shepherd*, 161 Idaho 14, 21, 383 P.3d 693, 700 (2016). Such circumstances exist when an appellant has only asked the appellate court to second-guess the trial court by reweighing the evidence, has failed to show that the trial court incorrectly applied well-established law, or has failed to provide authority or legal argument in support of the party's assertion.

We conclude that Janilyn is entitled to an award of attorney fees on appeal under I.C. § 12-121. Many of Raymond's arguments on appeal simply request this Court to reject the magistrate court's credibility findings and to reweigh the evidence. Further, Raymond raises various issues without making a cogent argument or providing any supporting authority, including failing to cite any supporting authority for his assertion that the magistrate court could not consider the witnesses' credibility in determining whether Raymond was voluntarily

17

underemployed. As a result, Raymond has failed to show the magistrate court incorrectly applied well-established law.

Although the district court did not award Janilyn attorney fees on intermediate appeal, the court in both its 2018 and 2020 opinions explained that appellate courts neither reweigh evidence nor second-guess credibility determinations. *See Neustadt*, 167 Idaho at 227, 469 P.3d at 14 ("[A]ppellate courts in Idaho do not reweigh evidence."); *Chandler*, 136 Idaho at 249, 32 P.3d at 143 (noting trial court determines credibility). Indeed, Raymond even acknowledges in his opening brief that "witness credibility is a matter within the trial court's province." Nevertheless, he persisted in making numerous appellate challenges to the magistrate court's credibility findings. For these reasons, an award of attorney fees to Janilyn under I.C. § 12-121 is appropriate.

## IV.

## CONCLUSION

Substantial and competent evidence supports the magistrate court's awards of spousal maintenance and of child support. Accordingly, we affirm the district court's 2020 opinion on intermediate appeal affirming the magistrate court's 2019 decision. Further, we award Janilyn attorney fees under I.C. § 12-121 and I.A.R. 41 and costs under I.A.R. 40.

Judge GRATTON and Judge LORELLO **CONCUR**.

18